UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ROBERT D. COLEMAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:21-cv-00375-JPH-MJD ) |
| S. KELLAMS, | ) ) ) |
| Defendant. | ) |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Robert D. Coleman, a prisoner at Wabash Valley Correctional Facility, alleges that Officer S. Kellams violated his Eighth Amendment rights by using excessive force against him. Officer Kellams has filed a motion for summary judgment on the basis of qualified immunity. For the reasons that follow, her motion is **GRANTED**.

### I. Summary Judgment Standard

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez,* 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

## II. Background

The incident that is the subject of Mr. Coleman's allegations occurred on May 1, 2021, at Wabash Valley Correctional Facility where Mr. Coleman was confined to a cell on the upper range of a segregation unit. (*Id.*; dkt. 1 at 2). The defendant, Officer Samantha Kellams, was a correctional officer cleaning out a

nearby cell. (*Id.*). Mr. Coleman exposed his penis to Officer Kellams and another female correctional officer and masturbated for two minutes. Officer Kellams ordered him to stop. Mr. Coleman did not comply, so Officer Kellams sprayed him with mace to get him to comply. These facts are undisputed as the incident was captured on video. (Dkt. 60-2 Manual Filing).

The video begins with Officer Kellams and another female correctional officer ascending the stairs of Mr. Coleman's range. (Dkt. 60-2 at 00:01). Mr. Coleman immediately opens the cuff port of his cell, which is located at the top of the stairs. (*Id.* at 00:02). When Officer Kellams and her colleague reach the top of the stairs, Mr. Coleman exposes his penis and starts fondling himself. (*Id.* at 00:10 – 00:16). As Officer Kellams passes his cell, she orders him to stop. (*Id.* at 00:16).

Officer Kellams and her colleague then begin cleaning out the cell four down from Mr. Coleman. (00:16 – 01:00). Mr. Coleman continues masturbating. (*Id.*). When Officer Kellams exits the cell four down, Mr. Coleman moves closer to his cuff port and continues masturbating. (01:00 – 01:10). Officer Kellams then turns and walks back toward the stairs, at which time Mr. Coleman sticks his penis through the cuff port, continues masturbating, and starts striking his penis against the cuff port walls. (*Id.* at 01:30 - 01:40).

Officer Kellams stops, puts down the items in her hands, and confers with her colleague. (*Id.* at 01:40 – 01:45). She removes a can of mace from her belt and approaches Mr. Coleman's cell. (*Id.* 01:45 – 01:48). Mr. Coleman steps back, continues masturbating, and sticks his left forearm through the cuff port. (*Id.*).

3

Officer Kellams warns Mr. Coleman that she is going to mace him if he doesn't stop, but he continues, so Officer Kellams deploys the mace. (*Id.* at 01:48 – 01:55; dkt. 60-1 at 48). Mr. Coleman shouts at Officer Kellams the whole time. (Dkt. 60-2 at 01:48 – 01:55).

When Officer Kellams steps away from Mr. Coleman's cell, he immediately sticks his penis through the cuff port and resumes masturbating. (*Id.* at 01:55 – 02:00). Officer Kellams gives more verbal orders to stop, but Mr. Coleman is undeterred. (01:59 – 02:15). Eventually, Officer Kellams picks up her items and walks down the stairs. (*Id.* 02:10 – 02:15). Mr. Coleman sticks his left arm through the cuff port and continues masturbating while watching Officer Kellams and her colleague leave the unit. (*Id.* at 02:15 – 2:34). Immediately thereafter, two male correctional officers enter the range, remove Mr. Coleman from his cell, and take him to a decontamination shower. (*Id.* at 02:50 – 06:45; dkt. 60-1 at 56).

Before this incident, Mr. Coleman thought Officer Kellams was "cool." (Dkt. 60-1 at 42). She knew he liked to expose himself to the women working at the prison, and he didn't think she would use force to make him stop.[1] (*Id.*).

Mr. Coleman did not suffer long-term injuries. (*Id.* at 67). He experienced burning during urination for a few days, and he had a couple blisters, which the medical staff told him to rinse with cold water. (*Id.* at 67, 75-76).

---

[1] Mr. Coleman had "a similar incident" earlier that day with another female correctional officer. (Dkt. 60-2 at 15).

### III. Discussion

Officer Kellams argues that she is entitled to qualified immunity for using mace to try to get Mr. Coleman to stop masturbating and cover himself after he ignored her verbal order to stop. (Dkt. 61 at 5-6).

**A. Legal Standard**

Qualified immunity protects government officials from damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" at the time that the conduct occurred. *Campbell v. Kallas*, 936 F.3d 536, 545 (7th Cir. 2017) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

Although qualified immunity is an affirmative defense, the plaintiff has the burden of defeating it once the defendants raise it. *Archer v. Chisolm*, 870 F.3d 603, 613 (7th Cir. 2017). To do so, the plaintiff must show: (1) that the defendant violated a constitutional right, when construing the facts in the light most favorable to the plaintiff; and (2) that the right was clearly established at the time of the alleged violation, such that it would have been clear to a reasonable actor that his conduct was unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). A failure to show either is fatal for the plaintiff's case, and courts may begin (and possibly end) with either inquiry. *Id.* at 236.

To be "clearly established," a constitutional right "must have a sufficiently clear foundation in then-existing precedent." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). The principle of fair notice pervades the qualified immunity doctrine. *Campbell*, 936 F.3d at 545. Qualified immunity applies unless the

5

specific contours of the right "were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014).

Given this emphasis on notice, clearly established law cannot be framed at a "high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). "A rule is too general if the unlawfulness of the officer's conduct 'does not follow immediately from the conclusion that [the rule] was firmly established.'" *Wesby*, 138 S. Ct. at 590 (quoting *Anderson v. Creighton*, 483 U.S. 635, 641, (1987)). Existing caselaw must "dictate the resolution of the parties' dispute," *Comsys, Inc. v. Pacetti*, 893 F.3d 468, 472 (7th Cir. 2018). While "a case directly on point" is not required, "precedent must have placed the . . . constitutional question beyond debate," *White v. Pauly*, 137 S. Ct. 548, 551, (2017) (quotation marks omitted).

Put slightly differently, a right is clearly established only if "every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015). "The Supreme Court's message is unmistakable: Frame the constitutional right in terms granular enough to provide fair notice because qualified immunity 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Campbell*, 936 F.3d at 546 (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quotation marks omitted)).

### B. Analysis

As a general matter, the Constitution prohibits prison officials from maliciously or sadistically inflicting pain on prisoners. *E.g. Stockton v. Milwaukee County*, 44 F.4th 605, 619 (7th Cir. 2022). Five factors govern whether a guard's use of force violates the Eighth Amendment: (1) the need for the application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; (4) the guard's efforts to temper the severity of a forceful response; and (5) the extent of the plaintiff's injuries. *Hudson v. McMillian*, 503 U.S. 1, 7-8 (1992).

Here, Officer Kellams used brief, non-lethal force by spraying Mr. Coleman with mace for a few seconds after he refused to follow her direct order that he stop masturbating. (Dkt. 60-2 at 01:48 – 01:55). His injuries were minor and went away after a week. (Dkt. 60-1 at 67).

Mr. Coleman has not shown that Officer Kellams' decision to use mace after he disobeyed her order to stop masturbating and cover himself was clearly unconstitutional. (Dkt. 60-2). He has not provided a "closely analogous case finding the alleged violation unlawful," shown "such a clear trend . . . that we can say with fair assurance that the recognition of the right by controlling precedent was merely a question of time," or shown that Officer Kellams' conduct was "so egregious and unreasonable that no reasonable official could have thought he was acting lawfully." *Id.* at 620-21.

Instead, using mace is appropriate "when reasonably necessary . . . to subdue recalcitrant prisoners." *Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir.

7

2010); *see also Kervin v. Barnes*, 144 Fed. App'x 551, 552 (7th Cir. 2005) ("This court has held that prison guards may use chemical sprays when reasonably necessary to subdue recalcitrant prisoners, for orders must be obeyed, and there are only so many choices available to correctional officers when inmates refuse."). Courts afford great deference to prison officials in determining when use of force is necessary. *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984) ("The responsible institutional personnel on the spot are in a better position to determine when [mace] is necessary than the courts. Clearly, the use of a chemical agent in dangerous quantities is justified only in narrowly defined circumstances but the use of nondangerous quantities of the substance in order to prevent a perceived future danger does not violate 'evolving standards of decency' or constitute an 'unnecessary and wanton infliction of pain.'").

Mr. Coleman has not identified a reasonable, alternative method that Officer Kellams could have used to get him to comply with her order. At his deposition, he argued that she should have closed his cuff port or called for backup. (Dkt. 60-1 at 43). But closing his cuff port was not possible, as Mr. Coleman had stuck his entire left forearm through the cuff port to hold it open when Officer Kellams approached his cell. (Dkt. 60-2 at 01:45 – 01:48). Regardless, no clearly established law requires prison officials to let Mr. Coleman expose himself to female correctional officers so long as his cuff port remains closed. Nor does clearly established law require female correctional officers to wait for backup before dealing with repugnant behavior of prisoners. Instead, prison officials have substantial discretion in deciding what steps are

8

appropriate to get a prisoner to comply with reasonable orders. That's true here when, as explained above, the amount of force used was reasonable under the circumstances.

Last, Mr. Coleman argues that Officer Kellams' conduct was clearly unconstitutional because the mace came in contact with his genitals. This argument is a nonstarter—Officer Kellams' use of mace was in direct response to Mr. Coleman's refusal to obey her order, stop masturbating, and cover his genitals. There's no designated evidence of gratuitous or intentional targeting of his genitals with mace.

### IV. Conclusion

Officer Kellams' motion for summary judgment is **GRANTED**. Dkt. [59]. Final judgment in accordance with this Order shall now issue.

**SO ORDERED**.

Date: 9/22/2023

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

ROBERT D. COLEMAN
179553
WESTVILLE - CF
WESTVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
5501 South 1100 West
WESTVILLE, IN 46391

Carlton Wayne Anker
Lewis and Wilkins LLP
anker@lewisandwilkins.com

9

Laura Brown
Lewis and Wilkins LLP
brown@lewisandwilkins.com

Eric Ryan Shouse
Lewis And Wilkins LLP
shouse@lewisandwilkins.com